UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 24-12652-KHT |
| CREAGER MERCANTILE CO. | ) | |
| EIN: 84-0505231, | ) | Chapter 11, Subchapter V |
| Debtor. | ) | |

## <u>AMENDED  PLAN OF REORGANIZATION DATED SEPTEMBER 27, 2024</u>

Creager Mercantile Co. ("CMC" or "Debtor"), Debtor and Debtor-in-Possession in this Chapter 11, Subchapter V, case, sets forth its Plan of Reorganization Dated September 27, 2024 as follows:

## I.    <u>INTRODUCTION</u>

1.1 -   This document constitutes the Plan of Reorganization for the Debtor.  This document is designed to provide all creditors and parties in interest with sufficient information with which to make an informed vote as to the acceptance or rejection of the Debtor's Plan.

1.2 -   Any terms which are set forth in this document and defined in the Bankruptcy Code shall have the meaning attributed to them as set forth in  Section II herein.

1.3 -   Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan.  Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting. Each holder of an Allowed Claim in Classes 3, 5, 6 and 7 shall be entitled to vote to accept or reject the Plan.

1.4 -   Regardless of creditor votes, if the Plan meets all of the applicable requirements of Section 1129(a) of the Bankruptcy Code, other than subsections (8), (10), and (15), the Court may confirm the Plan if it does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

1

1.5 -   As discussed more fully below, the Debtor firmly believes that the Plan represents the best alternative for providing the maximum value for creditors.  The Plan provides creditors with a distribution on their Claims in an amount greater than any other potential known option available to the Debtor.

1.6 -   THIS PLAN AND THE DISCLOSURES CONTAINED HEREIN HAVE BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION.  THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS PLAN.

## II.   **DEFINITIONS**

2.1 -   <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2) of the Bankruptcy Code.

2.2 -   <u>Allowed Claim</u> shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

2.3 -   <u>Allowed Secured Claim</u> shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder

2

of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

2.4 - <u>Avoidance Actions</u> means each Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable subordination under §510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

2.5 - <u>Claim</u> shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

2.6 - <u>Class</u> shall mean any Class into which Allowed Claims are classified pursuant to Article III.

2.7 - <u>Class 1 – 8 Claims and Interests</u> shall mean the Allowed Claims and Interests so classified in Part III.

2.8 - <u>Code</u> shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

2.9 - <u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

2.10 - <u>Court</u> shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

2.11 - <u>Disputed Claim</u> shall mean any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

3

2.12 - <u>Effective Date of the Plan</u> shall mean fourteen days after the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

2.13 - <u>Gross Revenue</u> shall mean all gross cash receipts of the Debtor for any given time period, less all taxes collected by the Debtor from customers (i.e. sales taxes).

2.14 - <u>Net Cash Flow</u> shall mean the Debtor's Gross Revenue less payment of necessary and reasonable monthly expenses prior to payments to Class 7 General Unsecured Creditors, as demonstrated in the Projections attached to this Plan.

2.15 - <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

2.16 - <u>Petition Date</u> shall mean the date on which the voluntary petition was filed by the Debtor on May 16, 2024.

2.17 - <u>Plan</u> shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

2.18 - <u>Priority Claim</u> shall mean any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

2.19 - <u>Professional Fees</u> shall mean the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a Professional Person.

2.20 - <u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

2.21 - <u>Tax Claim</u> shall mean any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

2.22 - <u>Unclassified Priority Claims</u> shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

4

2.23 - <u>Other Definitions</u>.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein

### III.    <u>HISTORY AND EVENTS LEADING TO BANKRUPTCY</u>

Debtor is a Colorado corporation. Debtor is a locally owned and operated family business and has been serving Denver metro and Colorado front range businesses since 1958. Donald "Chip" Creager owns 95% of the Debtor, and his mother, Mary Creager, owns the remaining 5%. Mr. Creager is also the President and is involved in the day to day operations of the Debtor. Mary Creager is not involved in the business affairs of the Debtor.

As a wholesale grocery distributor, the Debtor supplies a variety of products to its clients, such as grocery items, baking supplies, candy, air fresheners, beverages, smoking accessories, and an endless list of items to smaller convenience stores and businesses. The Debtor prides itself in being able to distribute a larger assortment of products from small start-up manufacturers, allowing innovative products to enter the independent retail market. The Debtor's primary source of income is derived from the sale of goods. The Debtor also receives $20,000 per month from an affiliated entity, Maxwell Distributors, who rents a portion of the Debtor's current premises. The $20,000 is paid by the affiliated entity directly to the landlord on account of the monthly rent due.

The Debtor's cash flow began to suffer in 2023 when it was in the process of moving from one building to another, but was unexpectedly required to pay rent for two facilities at the same time due to delays in moving into the new premises. The Debtor paid double rent for approximately 8 months to two different landlords due to delays that were not within the Debtor's control. The City of Denver Building and Fire Departments delayed contractors and massively inflated the moving budget. As a result, the Debtor's cash flow suffered and it fell behind on agreed payments to the Colorado Department of Revenue ("CDOR") for over  two million dollars in past due excise taxes. The Debtor previously disputed and litigated the applicability of the excise taxes as to one product, however, the Debtor did not succeed in that litigation and instead the court issued a large judgment in favor of the CDOR. The delinquencies on the Debtor's payment plan with the CDOR and anticipated enforcement by the CDOR ultimately caused the Debtor to seek protection under the Bankruptcy Code.  As a result of the ongoing financial difficulties, and sudden threats to have

its business shut down, the Debtor filed its voluntary petition for relief pursuant to Chapter 11, Subchapter V of the Bankruptcy Code on May 16, 2024.

### IV. PLAN OVERVIEW AND CLASSIFICATION OF CLAIMS AND INTERESTS

| CLASS | STATUS | TREATMENT |
|---|---|---|
| Class 1 - Allowed Claims Pursuant to 11 U.S.C. § 507(a)(4) and (a)(5) – Wage Claims | Unimpaired | Paid in full on the Effective Date. The Debtor does not believe that any Class 1 Claims exist. |
| Class 2 – Toyota (Racks) | Unimpaired | Allowed Secured Claim shall be allowed in the amount of $278,135.35, less any payments received post-Petition Date, and paid pursuant to the relevant loan documents. The monthly payment is approximately $6,419.41. Any pre-Petition Date and post-Petition Date arrearages shall be paid within 60 days of the Effective Date of the Plan. The Debtor estimates the pre-Petition Date arrearage to be less than $25. |
| Class 3 – Toyota (Forklift) | Impaired | Allowed Secured Claim shall be allowed in the amount of $20,290, less any payments received post-Petition Date, and paid pursuant to the relevant loan documents. The monthly payment is approximately $490.87 . Any pre-Petition Date and post-Petition Date arrearages shall be paid within 60 days of the Effective Date of the Plan. The Debtor anticipates the pre-Petition Date arrearage to be less than $514. |
| Class 4 – U.S. Small Business Administration | Unimpaired | Allowed Secured Claim shall be allowed and paid pursuant to the relevant loan documents. The anticipated monthly payment is approximately $731. |
| Class 5 – Leaf Capital Funding, LLC | Impaired | The Class 5 claim shall be allowed in the amount of $87,908. The Debtor shall surrender the collateral securing the Class 5 claim within 30 |

6

| | | |
|---|---|---|
| | | days of the Effective Date, or sooner if approved with a Court order. The Class 5 claim shall participate as a Class 7 general unsecured creditor pursuant to 11 U.S.C. §506 to the extent the creditor's liquidation of collateral does not satisfy its claim. |
| Class 6 – Associated Wholesale Grocers | Impaired | Class 6 is impaired. The Debtor shall pay the Class 6 claim in the ordinary course of business within 7 days of the Effective Date without interest and/or pursuant to 11 U.S.C. §503(b)(9). The Debtor and Class 6 creditor may continue to do business pursuant to the relevant documents. |
| Class 7 – General Unsecured Creditors | Impaired | The Class 7 General Unsecured Creditors are impaired. Class 7 shall receive a percentage of Gross Revenue over a period of five (5) years as follows:<br><br>Year 1: .001%<br>Year 2: .03%<br>Year 3: .1%<br>Year 4: .4%<br>Year 5: 2.2% |
| Class 8 – Interests in Creager Mercantile Co. held by Interest Holders | Unimpaired | Interest holders are unimpaired and shall retain their interests |

## V.    <u>DESCRIPTION OF ASSETS</u>

The values of the Debtor's assets, owned on the Petition Date are set forth in the following chart:

| **Asset** | **Estimated Value** |
|---|---|
| | |
| Cash | $850 |
| Bank Account balances | $38,000 |
| Accounts Receivable | $93,335 |
| Interests in Associated Wholesale Grocers | $33,934 |
| Inventory | $1,302,260 |
| Office furniture, equipment | $59,600 |
| 2009 Isuzu beverage truck | $5,000 |
| Warehouse racks | $280,000 |

| | |
|---|---:|
| Forklift | $21,000 |
| Floor cleaner | $9,100 |
| Customer lists | Unknown |
| Note receivable (LIT Brands) | $59,290 |
| Anti-trust claim | Unknown |
| | |
| **Total** | **$1,902,369** |

The asset values set forth above are as of the Petition Date unless otherwise noted. The value of the Debtor's assets are generally listed at the book value of the assets unless otherwise indicated.  The Debtor's largest group of assets is its inventory, which consists of various consumer grocery products available for resale.  The liquidation value of the assets would be significantly less than the book value, as there is a limited market for substantial quantities of grocery items. The Debtor has also listed its intellectual property, including customer lists, with an unknown value. The Debtor is currently unable to quantify the value of its intellectual property, but believes it has little to no value.

The Debtor has also listed a number of payments in the ninety (90) days prior to filing. The Debtor is still reviewing the transfers, but does not believe that any claims arising under section 547 (preferential transfers) or 548 (fraudulent conveyances) exist or have any value to the estate based on its preliminary review.

## VI.   CLAIMS AND INTERESTS

### A. UNCLASSIFIED PRIORITY CLAIMS

Claims which are more particularly defined under Section 507(a)(1), 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and will be paid in full on the effective date of the Plan, **unless otherwise treated differently in this Plan**.  These claims consist of administrative expenses incurred during the course of the Chapter 11 case, claims incurred in an involuntary case (which are not applicable) and certain priority tax claims.

### B. ADMINISTRATIVE EXPENSE CLAIMS

The Debtor retained Kutner Brinen Dickey Riley, P.C. ("KBDR") as its bankruptcy counsel. The Debtor provided KBDR with a retainer in the amount of $12,704. The Debtor

supplemented the retainer with an additional $4,681.94 on July 11, 2024, increasing the amount held in trust to $17,385.94. The Debtor estimates that the total legal fees for KBDR through Plan confirmation will be $25,000.00 depending on litigation over the Plan which will be reduced by the retainer. If there is extensive litigation and discovery with respect to the Plan could increase to be approximately $35,000 through confirmation of the Plan.

The Subchapter V Trustee, Mark Dennis, also has an administrative expense for services provided during the course of the Debtor's bankruptcy case. Mr. Dennis's fees are not expected to exceed $5,000. In the event of a nonconsensual confirmation of the Plan, Mr. Dennis will continue to receive compensation at his standard hourly rate for his services in connection with administering the Plan.

Administrative claims of KBDR and Mr. Dennis will be paid in full on the Effective Date of the Plan or upon allowance, or as otherwise agreed to by the Debtor and administrative expense claimants.

### C. TAX CLAIMS

The Colorado Department of Revenue ("CDOR") filed an administrative priority amended claim on July 18, 2024 as Claim No. 5-2 in the amount of $2,123,691.39 pursuant to 11 U.S.C. §507(a)(9)("CDOR Priority Claim"). The Debtor is currently analyzing this claim, and if it has any objection as to its accuracy, the Debtor will file an objection pursuant to terms of this Plan or otherwise attempt to resolve any discrepancy directly with the CDOR. If the Debtor does not have any dispute with the CDOR Priority Claim, then this claim will accrue interest at 11% per annum and will be paid within approximately fifty-three (53) months of the Effective Date of the Plan beginning on January 1, 2025 in equal monthly installments of $52,272.68. Alternatively, if the Plan is not confirmed by December 31, 2024, the CDOR shall be paid in equal monthly installments sufficient to pay the CDOR Priority Claim in full within 60 months of the Petition Date with interest accruing at 12% per annum.

For purposes of the CDOR's claim, default is defined as the Debtor's failure to make timely payments to the CDOR as set forth in the Plan or the Debtor not remaining in tax compliance post-confirmation as to tax filing and payment obligations. In the event

of default, written notice is required on the Debtor, Debtor's counsel, and the disbursing agent. In the event default is not cured within fourteen (14) days from the date of notice in writing, then, regardless of any other Plan provision, the entire pre-petition amount due to the CDOR is immediately due and owing, and the CDOR shall be able to enforce obligations as if the bankruptcy case had not been filed and no stay is then in effect.

The Internal Revenue Service ("IRS") filed an amended proof of claim asserting a priority claim in the amount of $0 pursuant to 11 U.S.C. § 507(a)(8) at Claim No. 11-2.

The Debtor listed the City and County of Denver with a priority claim in the amount of $1,002. This creditor did not file a proof of claim.

For the avoidance of a doubt, any priority claim asserted by the IRS or the CDOR will be paid in full no later than five (5) years following the Petition Date.


**D.    11 U.S.C. §503(b)(9) Claims**

Red Bull Distribution Company filed a proof of claim in the priority amount of $18,570.09, Claim No. 12-1. This claim is believed to be related to products delivered within 20 days of the Petition Date pursuant to 11 U.S.C. §503(b)(9).

Rolling Frito-Lay Sales, LP filed a proof of claim in the priority amount of $40,430.06, Claim No. 16-1. This claim is believed to be related to products delivered within 20 days of the Petition Date pursuant to 11 U.S.C. §503(b)(9).

PepsiCo Sales, Inc. filed a proof of claim in the priority amount of $62,819.48, Claim No. 15-1. This claim is believed to be related to products delivered within 20 days of the Petition Date pursuant to 11 U.S.C. §503(b)(9).

The Priority Claims of Red Bull Distribution Company, Rolling Frito-Lay Sales, LP, and PepsiCo Sales, Inc. shall be amortized with interest at the rate of 4% per annum and paid in equal monthly installments over a five (5) year period following the Effective Date of the Plan.  The payment shall be paid monthly in the estimated amounts as follows:

-    Red Bull: $342/month (totaling $4,104 per year);
-    Rolling Frito-Lay: $744.58/month (totaling $8,934.96 per year), and
-    PepsiCo: $1,156.92/month (totaling $13,883.04 per year)

The first payment on account of the Red Bull Distribution Company, Rolling Frito-Lay Sales, LP, and PepsiCo claims shall be due on the 15th day of the first full month

10

following the Effective Date of the Plan and shall continue until the Claims are paid in full.

## VII.  <u>CLASSIFIED CLAIMS</u>

7.1 -  **CLASS 1.    Priority Wage Claims.**  Allowed Class 1 Priority Claims shall be paid in full on the Effective Date, unless the holder of a Class 1 claim agrees to an alternative treatment.  The Class 1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code. On May 22, 2024, the Court entered an *Order Authorizing (A) Payment of Prepetition Employee Wages and Salaries; and (B) Payment of All Costs and Expenses Incident to the Foregoing Payments* (Docket No. 28). As a result, the Debtor does not anticipate that any Class 1 claims exist.

7.2 -  **CLASS 2.    Toyota Industries Commercial Finance, Inc. (Warehouse Racks).**  The Class 2 Secured Claim consists of the allowed secured claim held by Toyota Industries Commercial Finance, Inc. ("Toyota") based on warehouse racks ordered, delivered, and installed pre-Petition Date which was perfected by the filing of a UCC-1 Financing Statement with the Colorado Secretary of State. The Class 2 Secured Claim is unimpaired by the Plan, and will be treated and paid as follows:

> a.    The principal amount of the Class 2 Claim will be allowed in the amount of: (i) $278,135.35; or (ii) if the Class 2 Claimant objects, in an amount to be determined by the Court on or before the Confirmation Date; or (iii) an amount agreed upon by the Debtor and the Class 2 Claimant on or before the Confirmation Date.  The amount of the Class 2 Claim shall be reduced by payments received post-Petition Date prior to confirmation of the Plan, which shall be applied to principal and interest pursuant to the loan documents;

> b.    The Class 2 Claimant will retain all liens that secured its Claim as of the Petition Date;

> c.    The Class 2 Claim shall bear interest: (i) at a rate as indicated in the loan documents of 7.99% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 2 Claimant objects to such rate in writing and serves a copy of such objection on the Debtor at least fifteen (15) days prior to the

commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by the Debtor and the Class 2 Claimant;

      d.      The Class 2 Claim shall be paid as required under the original loan documents. The monthly payment is $6,419  with the last payment required in March 2028.

      e.      Any pre-Petition Date and post-Petition Date arrearages shall be paid within 60 days of the Effective Date of the Plan.

**7.3 -  CLASS 3. Toyota Industries Commercial Finance, Inc. (Forklift).**  The Class 3 Secured Claim consists of the secured claim of Toyota for a "Master Lease Agreement" with a one dollar buy out which was perfected by the filing of a UCC-1 Financing Statement with the Colorado Secretary of State. The Class 3 claim is impaired by this plan and shall be treated and paid as a secured lending agreement as follows:

      a.      The principal amount of the Class 3 Claim will be allowed in the amount of: (i) $20,289.85; or (ii) if the Class 3 Claimant objects, in an amount to be determined by the Court on or before the Confirmation Date; or (iii) an amount agreed upon by the Debtor and the Class 3 Claimant on or before the Confirmation Date.  The amount of the Class 3 Claim shall be reduced by payments received post-Petition Date prior to confirmation of the Plan, which shall be applied pursuant to the loan documents;

      b.      The Class 3 Claimant will retain all liens that secured its Claim as of the Petition Date;

      c.      The Class 3 Claim shall be paid $490.87 per month for 42 months, or less if the Debtor continues to make post-Petition Date, pre confirmation date payments, which shall reduce the allowed claim as set forth above.

      d.      Any pre-Petition Date and post-Petition Date arrearages shall be paid within 60 days of the Effective Date of the Plan.

**7.4 -  CLASS 4. U.S. Small Business Administration.**  The Class 4 Secured Claim consists of the secured claim of the Small Business Administration ("SBA") for a pre-Petition Date loan. The Class 4 Claim is unimpaired by the Plan.  The principal

amount of the Class 4 Claim will be allowed in the amount of $158,426.08. The Class 4 Secured Claim will be paid as required pursuant to the relevant loan documents. The monthly payment is approximately $731.

7.5 -   **Class 5. Leaf Capital Funding, LLC.** The Class 5 Secured Claim consists of a secured claim held by Leaf Capital Funding, LLC for the purchase and finance of tobacco "stamping" equipment and related accessories. The Class 5 claim is impaired by this Plan and shall be allowed in the total amount of $87,980.24. The collateral securing this claim is valued at $37,500. The Debtor shall surrender the collateral at its place of business within 30 days of the Plan Confirmation Date, or sooner pursuant to any relevant Bankruptcy Court order. The remainder of the claim, or approximately $50,408, shall be treated as a Class 7 General Unsecured Claim pursuant to 11 U.S.C. §506.

7.6 -   **Class 6. Associated Wholesale Grocers, Inc.** The Class 6 Secured Claim consists of a secured claim held by Associated Wholesale Grocers, Inc. for the purchase of inventory. The Class 6 claim is impaired by this plan and shall be treated and paid as follows:

   a.      The Debtor shall pay the Class 6 claim in the ordinary course of business within 7 days of the Effective Date without interest and/or pursuant to 11 U.S.C. §503(b)(9);

   b.      The Debtor and Class 6 creditor may continue to do business pursuant to the relevant documents;

   c.      The Class 6 Claimant will retain all liens that secured its Claim as of the Petition Date.

7.7 -   **Class 7. General Unsecured Claims**.  Class 7 is comprised of the Allowed General Unsecured Claims holding unsecured claims against the Debtor and more specifically identified on Exhibit A.  Class 7 shall be treated and paid as follows:

   a.      Class 7 shall receive a pro-rata distribution equal to an escalating percentage of the Debtor's Gross Revenue calculated on annual basis for a five (5) year period beginning on the one (1) year anniversary of the Effective Date of the Plan ("Class 7 Plan Term") as follows:

   i.   Year 1: 0.001%
   ii.  Year 2: 0.03%
   iii. Year 3: 0.1%

13

    iv.  Year 4: 0.4%
    v.  Year 5: 2.2%;

b.    Commencing on the first day of the second calendar year following the commencement of the Class 7 Plan Term and continuing each year thereafter, the Debtor shall distribute an amount equal to the respective percentage of the prior year's Gross Revenue as set forth above.  By way of example, if the Plan is confirmed in December 2024, the first distribution shall be made annually based on the Gross Revenue generated from January 2025 through December 2025;

c.    Based on the Debtors' projections, attached hereto as Exhibit B, the Debtor estimates that Class 7 Claims will receive approximately $677,545  over a five year period, or approximately 27%  on account of their claims totaling approximately $2.47 million.[1] Upon request by any party in interest, the Debtor shall provide an annual financial statement, including amounts disbursed to creditors in accordance with the Plan;

d.    The Debtor shall be entitled to retire the entire obligations to Class 7 Creditors at any time during the first two years of the Class 7 Plan Term by making a single pro rata distribution of $200,000, less amounts previously disbursed to unsecured creditors; and;

e.    In addition to the amounts set forth above, Class 7 shall receive fifty percent (50%) of the amounts recovered for claims arising under Chapter 5  after payment of attorney fees, cost of litigation, and cost of recovery.

7.8 -  **CLASS 8. Holders of Interests in Creager Mercantile Co**.  Class 8 is comprised of the holders of common shares existing as of the Petition Date.  Class 8 is unimpaired by the Plan.  On the Effective Date of the Plan, Class 8 interest holders shall retain all interests held on the Petition Date.

## VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1 -  The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date:

a.    All contracts and leases previously assumed or for which a motion to assume is

---

[1] The estimated payout of approximately $677,545 only applies if the case is confirmed consensually under section 1191(a). If the Plan is confirmed non-consensually under section 1191(b), the Debtor will be required to pay its projected disposable income under section 1191(c)(2)(A), estimated at $709,406.

pending;

    b.   Lease Agreement with BTC III Denver Industrial Center, LLC ("Commercial Property Lease") pursuant to the terms of the Assumption of Lease, Settlement, and Release Agreement ("Landlord Agreement") attached hereto as Exhibit D, and incorporated into the terms of this Plan. The Landlord Agreement includes an attached "Fifth Amendment to Lease Agreement" which memorializes the terms of the Landlord Agreement as an amendment to the original lease. Notwithstanding anything to the contrary in this Plan or the Order of Confirmation, the Landlord Agreement shall govern all aspects of assumption and cure of the Commercial Property Lease, including, without limitation, the exercise of all rights and remedies in the event of a default under the Landlord Agreement.

    c.   All contracts and leases that are not rejected.

8.2 -   The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases for which a motion to reject has been granted or is pending as of the Effective Date.  Further, executory contracts and unexpired leases with the following entities are deemed rejected pursuant to this Plan:

      i.   Quench USA, Inc.
     ii.   Loomis
    iii.   Cintas Corp.

8.3 -   A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **45** days after the date of the order confirming this Plan.

## IX.    FEASIBILITY OF THE PLAN

    The Debtor's Plan is feasible based upon the Debtor's prepared projections, attached hereto as Exhibit B, which reflect a conservative prediction of the Debtor's operations during the term of the Plan.  As evidenced by the projections, the Debtor anticipates that its income will be positive each year of the Plan, and will generate sufficient revenue to meet its obligations under the Plan.  The Debtor has used its best efforts to prepare accurate projections.  The Debtor's actual income will fluctuate based on actual sales and changes in the market.

    The primary risks related to ongoing operations are delayed deliveries from suppliers,

fluctuations in the market due to weather, and delays in payments from customers. The Debtor has distinguished itself in the market by focusing on providing its clients with a wide selection of products by sourcing items from both larger and smaller suppliers.

Even with the risks facing the Debtor's operations, the Debtor's plan remains feasible.  The Debtor anticipates that the Debtor's cash flow first year following confirmation will allow the Debtor to build sufficient cash to maintain its inventory, pay ongoing expenses, and pay creditors.

## X.    LIQUIDATION ANALYSIS

The principal alternative to a Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code.  Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office.  In a Chapter 7 case, the Chapter 7 Trustee would take over control of the Debtor's assets.  The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

As set forth on the Liquidation Analysis attached hereto as Exhibit C, if the Debtor's case were converted to a case under Chapter 7, the Debtor's remaining assets would be sold in satisfaction of the SBA secured claim.  The liquidation value of the assets would be reduced due to the liquidation sale, and would result in minimal funds to unsecured creditors.  In contrast, the Debtor's Plan will provide for recovery of approximately 27% to unsecured creditors.

## XI.    TAX CONSEQUENCE

The Debtor is not providing tax advice to creditors or interest holders.  **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtor or its counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.**  Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation.  Generally, unsecured creditors should have no tax impact as a result of Plan confirmation.  The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized.  Interest holders may have very complicated tax effects as a result of Plan confirmation.

## XII.  IMPLEMENTATION OF THE PLAN

12.1 -  **Effectuating the Plan.**  On the Effective Date of the Plan, Donald "Chip" Creager shall be appointed pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan.  Mr. Creager shall continue to receive an annual salary in the amount of $71,775, subject to adjustment as the Debtor determines is reasonable and appropriate. In addition to the compensation set forth above, Mr. Creager may receive additional compensation from the company, including a reduction of his liabilities through payment of claims for which Mr. Creager has issued a guaranty by the Debtor.

12.2 -  **Effective Date.**  The Plan will become effective on the date the Bankruptcy Court enters its Order confirming the Plan and said Order becomes final and non-appealable (the "Effective Date").

12.3 -  **Disputed Claims.**  Any claimant or the Debtor may file an objection to any claim no later than 45 days following the Effective Date.  The Debtor shall have standing to commence, prosecute, and settle claim objections, and avoidance actions without need for Court approval.  The Debtor does not believe there are any avoidance actions in this case.

12.4 -  **Administrative Expense Bar Date.**  Any creditor seeking allowance and payment of an administrative expense priority claim must do so no later than 45 days following the entry of the Order confirming the Plan.

12.5 -  **Exemption from Transfer Taxes.**  Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

12.6 -  **Final Decree.**  The Debtor will request entry of a final decree within 180 days of the Effective Date in the event this Plan is confirmed under §1191(a). However, to the extent this Plan is confirmed under 1191(b), a final decree may not be entered until completion of payments under the Plan and discharge of the Subchapter V Trustee.

12.7 -  **Discharge.** If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this

Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    (i) imposed by this Plan; or

    (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed through a nonconsensual confirmation under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due during the 5 year term of this Plan, or as otherwise provided in § 1192 of the Code, and the creditors' rights in the event of default may be greater. The Debtor will not be discharged from any debt:

    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

    **12.8 - Contractual Relationship.** The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and its creditors. In the event of a default by the Debtor under the Plan, including failure to timely file and pay any post-petition taxes, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan. Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by the Debtor must provide written notice to the Debtor and counsel for the Debtor of the claimed default, the notice must provide the Debtor a ten (10) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan. Upon the Debtor's failure to cure the default within such ten-day period, the creditor may proceed to exercise their rights and remedies under applicable State and Federal Law, including seeking to enforce the terms of the Plan or conversion of the Debtor's case to a case under Chapter 7. In the event the Debtor's Plan is confirmed through a non-consensual confirmation under 11 U.S.C. § 1191(b), creditors may have greater rights in the event of default, as debts are not discharged until the completion of all payments due during the five year term of the Plan.

    **12.9 - Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases which were entered into by the Debtor pre-petition, and not rejected either by

order of the Bankruptcy Court or pursuant to paragraph 8.2 of this Plan, are assumed as of the Effective Date of the Plan.

   12.10 -   **Revestment.** The entry of an Order confirming this Plan shall revest in the Debtor all property of the estate free and clear of all liens except those specifically set forth in the Plan.

   12.11 - **Retention of Jurisdiction**. Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

    a.  Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

    b.  Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(1), including compensation of the parties entitled thereto;

    c.  Resolution of any disputes regarding interpretation of the Plan;

    d.  Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

    e.  Modification of the Plan pursuant to 11 U.S.C. §1193;

    f.  Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor-in-Possession, by the representative of the estate or by a Trustee appointed pursuant to the Code;

    g.  Adjudication of any cause of action brought by the Debtor-in-Possession, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §542-549. This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code; and

    h.  Entry of a final decree.

   12.12 - **Satisfaction of Claims.** Except as otherwise required by or provided in this Plan, the Debtor shall receive a discharge on the confirmation date pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or

note, previously in default, so modified, shall be cured as modified as of the Confirmation Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

12.13 - **Headings**.  The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

12.14 - **Notices.**  All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.  All communications will be deemed delivered when received at the following addresses:

> a.  Creager Mercantile Co.
> c/o Donald "Chip" Creager
> 1375 West 47th Avenue
> Denver, CO 80211
>
> With a copy to:
> Jenny M.F. Fujii, Esq.
> Kutner Brinen Dickey Riley, P.C.
> 1660 Lincoln St., Suite 1720
> Denver, CO 80264
> Email: jmf@kutnerlaw.com

> b.  To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, otherwise, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

12.15 - **Unclaimed Payments**.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan, exclusive of the IRS, fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 18, within one (1) year of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

12.16 - **Subchapter V Trustee and Plan Payments**.  If this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Trustee's services shall be terminated at such time as the Plan has been substantially consummated.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Trustee shall continue to serve as Trustee, and shall accept Plan payments from the Debtor and convey said payments as provided herein.  As set forth above, the Trustee shall be entitled to reasonable compensation in accordance with 11

20

U.S.C. § 330 for acting as a disbursing agent under the Plan. The Trustee's compensation must be approved by the Court based on an hourly rate calculation of the services provided. In order to ensure funds are available to compensate the Trustee, the Trustee may deduct and hold up to 5% from the Plan payments from the Debtor prior to calculating disbursements to creditors until the amount of his compensation is approved by the Court.

12.17 - **Substantial Consummation**. Pursuant to 11 U.S.C. § 1183(c)(2), within fourteen (14) days after the Plan has been substantially consummated, the Debtor shall file a notice of the same with the Court, and serve the Subchapter V trustee, the United States trustee, and all parties in interest.

### XIII.   CONFIRMATION REQUEST

The Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. §1191(a). The Court may confirm the Plan pursuant to § 1191(b) if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired under, and has not accepted, the Plan.

DATED:  September 27, 2024                **CREAGER MERCANTILE CO.**

By: *s/  Donald Creager*_____
                    Donald "Chip" Creager, President

APPROVED AS TO FORM:

*s/ Jenny M.F. Fujii*_____
        Jeffrey S. Brinen, #20565
        Jenny M.F. Fujii, #30091
        Kutner Brinen Dickey Riley, P.C.
        1660 Lincoln St., Suite 1720
        Denver, CO 80264
        Telephone:  303- 832-2400
        Email: jmf@kutnerlaw.com

ATTORNEYS FOR CREAGER MERCANTILE CO.
DEBTOR AND DEBTOR-IN-POSSESSION