**EXHIBIT D**

# ASSUMPTION OF LEASE, SETTLEMENT, AND RELEASE AGREEMENT

This ASSUMPTION OF LEASE, SETTLEMENT, AND RELEASE AGREEMENT (the "Settlement Agreement") is entered into between Creager Mercantile Co. ("Creager" or "Debtor") and BTC III Denver Industrial Center LLC ("Landlord") as of the last date of the signature of the Parties (the "Execution Date"). The Debtor and the Landlord may be collectively referred to as the "Parties" or individually referred to as a "Party."

WHEREAS, on or about July 7, 2022, the Landlord entered into that certain *Lease Agreement* dated July 7, 2022 (as amended, the "Lease") with Creager, as tenant, for the premises in the building located at 1375 W. 47th Avenue, Denver, Colorado, 80211, said premises being more particularly described in the Lease;

WHEREAS, on May 16, 2024 (the "Petition Date"), the Debtor filed its voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Colorado, Denver Division (the "Bankruptcy Court"), commencing Case No. 24-12652-KHT (the "Bankruptcy Case");

WHEREAS, on July 24, 2024, the Landlord filed its proof of claim [Claim No. 22] (the "Landlord Claim") asserting a claim against the Debtor pursuant to the Lease in the amount of at least $179,023.22 as of the Petition Date.[1] The Landlord Claim consists of unpaid prepetition amounts owed by the Debtor on account of, among other things, (i) base rent, (ii) reimbursement for taxes, insurance, and operating expenses included as additional rent, and (iii) agreed-upon rent deferment payments;

WHEREAS, on August 14, 2024, the Debtor filed the *Plan of Reorganization Dated August 14, 2024* [Docket No. 91], as may be amended (the "Plan"), and the Bankruptcy Court scheduled a hearing on October 1, 2024 to consider confirmation of the Plan in order to facilitate the Debtor's emergence from the Bankruptcy Case on a subsequent date (the "Plan Effective Date");

WHEREAS, the Debtor desires to assume the Lease pursuant to 11 U.S.C. §365(b) and cure any arrearages over time; and

WHEREAS, without making any admissions of liability or other concessions, the Parties enter into this Settlement Agreement to avoid the expense of litigation and the uncertainties attendant thereto. The Parties desire to enter into this Settlement Agreement to provide for the final compromise, resolution, and settlement of all claims, issues, and disputes between and among the Parties in order for the Debtor to assume and cure the Lease as set forth herein.

NOW, THEREFORE, in consideration of the foregoing Recitals, which are incorporated into and are a part of this Settlement Agreement, and the promises, conditions, and covenants contained in this Settlement Agreement, and other good and valuable consideration, the adequacy of which is acknowledged, the Parties agree as follows:

[1] The Landlord is holding a security deposit ("Security Deposit") in the amount of $71,907.28.

1. **Bankruptcy Court Approval.** This Settlement Agreement is conditioned upon and subject to the approval of the Bankruptcy Court, and the entry of an order of the Bankruptcy Court approving this Settlement Agreement in form and substance reasonably satisfactory to the Parties (the "Approval Order"). On the Execution Date, the Debtor shall either: (1) file a motion with the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking the approval of this Settlement Agreement by the Bankruptcy Court; or (2) seek approval of this Settlement Agreement as incorporated into the terms of the Plan and attached to the Plan as an Exhibit. The entry of an order approving the Settlement Agreement through either procedure shall constitute the requisite Approval Order. The Parties shall support entry of the Approval Order.

2. **Assumption and Cure of the Lease.** The Parties have agreed that the assumption of the Lease is conditioned upon and subject to the Parties' execution of and entry into the *Fifth Amendment to the Lease Agreement* (the "Lease Amendment"), which is attached hereto as Exhibit 1. In order to assume the Lease pursuant to section 365(b) of the Bankruptcy Code, the Debtor shall pay a cure payment in the amount of $179,023.22 (the "Total Cure"). The Landlord has agreed to permit the Debtor to pay the Total Cure in accordance with the following terms:

(i) the Total Cure shall be paid in full and shall bear interest at 7% interest per annum;

(ii) in addition to all other rent obligations under the Lease, commencing on the first day of the first full calendar month following the Plan Effective Date and ending thirty-six (36) full calendar months thereafter (the "Cure Payment Term"), the Debtor shall pay to the Landlord, $5,527.72 on the first day of each calendar month during the Cure Payment Term (the "Monthly Cure Payment"), and the Landlord will apply the Monthly Cure Payment (excluding the interest component) against the Total Cure; and

(iii) the Security Deposit shall continue to be held by the Landlord and shall not be applied against any Monthly Cure Payment or the Total Cure.

3. **Failure to Pay by the Debtor.** The Debtor's failure to pay any Monthly Cure Payment within five (5) days of its due date shall be a default under the Lease without the requirement to notify the Debtor in writing of such failure. The Debtor shall be allowed five (5) days to cure any default of the Monthly Cure Payment. In the event that the Debtor defaults on any Monthly Cure Payment under this Settlement Agreement and then fails to cure such default within five (5) days, the Landlord may pursue such remedies as are available at law or in equity notwithstanding anything to the contrary in the Plan.

4. **Release by the Debtor.** Effective as of the Effective Date, in consideration of Landlord's execution of this Settlement Agreement, the Debtor, on behalf of themselves and all of their predecessors, successors, officers, directors, managers, affiliates, and assigns, and anyone claiming by, through, or under them (collectively, the "Debtor Releasing Parties"), hereby release, acquit, and forever waive and discharge any and all claims and demands of whatever kind or character, whether known, unknown, vicarious, derivative, or direct, that the Debtor or the other Debtor Releasing Parties, individually, collectively, or otherwise, may have or assert, as of the Effective Date, against (a) the Landlord; (b) any parent, subsidiary, or affiliate of the Landlord; (c) any past or present officer, director, or employee of the entities just named in clauses (a) and (b),

in their individual and official capacities; and (d) any predecessors, parent companies, subsidiaries, owners, shareholders, members, managers, operating units, affiliates, divisions, agents, representatives, officers, directors, partners, employees, fiduciaries, insurers, attorneys, successors, and assigns of the entities just named in clauses (a) through (c), (collectively, the "Landlord Released Parties"). This release and waiver of claims includes, without limitation, any claim or demand arising out of or relating in any way to (a) the Lease; (b) any other contract, agreement, or understanding between, concerning, or relating to the Parties and the Lease; and (c) any other alleged act, breach, conduct, negligence, gross negligence, or omission of the Landlord or any of the other Landlord Released Parties as of the Effective Date related to (a) and (b). However, this release and waiver of claims shall not apply to the Landlord's duties and obligations pursuant to paragraph 3.1 of the Lease.

5. **Authority.** Each of the Parties represents and warrants that (as to the Debtor, subject to the entry of the Approval Order) (i) it has the requisite power and authority to execute and deliver this Agreement and the Lease Amendment; (ii) the execution and delivery of this Agreement and the Lease Amendment by such Party has been duly authorized by all requisite action(s) and creates valid and binding obligations of such Party, enforceable in accordance with its terms; and (iii) it is authorized to execute this Agreement and the Lease Amendment on behalf of its partners, shareholders, members, managers, officers, directors, employees, agents, legal representatives, trustees, heirs, estates, parents, subsidiaries, affiliates, predecessors, successors and assigns and anyone claiming by, through, or under them.

6. **Sufficiency of Consideration.** The Parties acknowledge the sufficiency of the consideration referenced herein to compromise and settle all claims, causes of action, demands, judgments, costs, and attorneys' fees and expenses, whatsoever settled, discharged, and/or released herein.

7. **Counterparts.** This Settlement Agreement may be executed by each of the Parties in counterparts with the same effect as if the Parties had signed the same original. Facsimile signatures or signatures transmitted via electronic means shall be accepted as original signatures.

8. **Governing Law.** This Agreement is made and entered into in the State of Colorado, and shall in all respects be interpreted, enforced, and governed by and under the internal laws of the State of Colorado, without regard to the conflict of law rules thereof.

9. **Submission to Jurisdiction and Venue.** Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the Bankruptcy Court and any appellate court arising therefrom in any action or proceeding arising out of or related to this Settlement Agreement, the Approval Order, or the transactions hereunder, and each of the Parties hereto irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in such courts and that any such action or proceeding shall be brought exclusively in the Bankruptcy Court. The Parties hereby knowingly, voluntarily, irrevocably, and intentionally waive the right they may have to a trial by jury in respect of any litigation based hereon, or arising out of, under or in connection with this Settlement Agreement.

10. **Notice.** Any notice required under this Settlement Agreement shall be submitted in writing and sent via email and overnight delivery service or express mail next day delivery and addressed to:

| The Debtor: | The Landlord: |
| --- | --- |
| Jenny M.F. Fujii | Deborah M. Perry |
| **KUTNER BRINEN DICKEY RILEY, P.C.** | **MUNSCH HARDT KOPF & HARR, P.C.** |
| 1660 Lincoln Street, Suite 1720 | 500 N. Akard Street, Suite 4000 |
| Denver, CO 80264 | Dallas, Texas 75201 |
| Telephone: (303) 832-2400 | Telephone: (214) 855-7500 |
| Email: jmf@kutnerlaw.com | Email: dperry@munsch.com |

11. **Entire Agreement.** Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Settlement Agreement are merged into and with this Settlement Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter of the Settlement Agreement.

12. **Successors and Assigns.** This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' respective successors and assigns.

13. **Modifications.** This Settlement Agreement may be amended, modified, or changed only by a written instrument or instruments executed by duly authorized officers or other representatives of each Party and may not be amended, modified, or changed orally.

14. **Necessary Actions.** The Parties shall take any and all steps and actions and execute any and all documents necessary to effectuate the terms and conditions of this Settlement Agreement, including, but not limited to, the Lease Amendment.

15. **Severability.** All provisions within this Settlement Agreement are to be read in conjunction with each other. Provisions should be read together so as to harmonize the whole. Before declaring any provision of this Settlement Agreement invalid, a court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents. If any provision of this Settlement Agreement is found by a court to be void, voidable, or otherwise unenforceable, all remaining provisions of this Settlement Agreement shall remain in full force and effect so as to carry out the expressed intent of the Parties herein.

16. **Headings.** All headings within the Settlement Agreement are provided for convenience and reference only and shall not affect the interpretation of this Settlement Agreement in any way.

17. **Effective Date of Settlement Agreement.** This Settlement Agreement is expressly conditioned on its approval by the Bankruptcy Court. The "Effective Date" of this Settlement Agreement shall be the date on which the Bankruptcy Court enters the Approval Order, at which time the Agreement shall become immediately binding on each of the Parties.

[SIGNATURE PAGES FOLLOW]

**AGREED TO AND ACCEPTED BY:**

**CREAGER MERCANTILE CO.**

/s/: ______________________________

Printed Name: _____________________

Title: ________________________

Dated: _______________________

**BTC III DENVER INDUSTRIAL CENTER LLC**, a Delaware limited liability company

By: Build-To-Core Industrial Partnership III LLC, a Delaware limited liability company, its Sole Member

By: BCG BTC III Managing Member LLC, a Delaware limited liability company, its Investment Managing Member

/s/: _________________________________

Printed Name:_____________________

Title: ________________________

Dated: _______________________

# EXHIBIT 1

**Lease Amendment**