# FIFTH AMENDMENT TO LEASE AGREEMENT

THIS FIFTH AMENDMENT TO LEASE AGREEMENT (this "Amendment") is dated as of ____________________, 2024 (the "Effective Date"), and is entered into by and between BTC III DENVER INDUSTRIAL CENTER LLC, a Delaware limited liability company ("Landlord"), and CREAGER MERCANTILE CO., a Colorado corporation ("Tenant", and together with Landlord, the "Parties"), with reference to the following facts:

A. Landlord and Tenant are party to that certain Lease Agreement dated July 7, 2022 (the "Original Lease"). The Original Lease, as amended by a First Amendment to Lease Agreement dated September 22, 2022, a Second Amendment to Lease Agreement dated January 26, 2023, a Third Amendment to Lease Agreement dated July 17, 2023, and a Fourth Amendment to Lease Agreement dated December 4, 2023, is referred to herein as the "Lease". Pursuant to the terms of the Lease, Tenant is currently leasing approximately 52,785 square feet of leasable area (the "Premises") in the building located at 1375 W. 47th Avenue, Denver, Colorado (the "Building"). Capitalized terms used herein but not defined shall be given the meanings assigned to them in the Lease.

B. On May 16, 2024 (the "Petition Date"), Tenant filed its voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code, commencing Case No. 24-12652-KHT (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court").

C. On July 24, 2024, Landlord filed a proof of claim in the amount of $179,023.22 (the "POC"), consisting of certain amounts owed by the Tenant on account of Rent obligations and late charges assessed under the Lease prior to the Petition Date.

D. The Parties have agreed that, as of the Petition Date, Tenant is delinquent in the payment of Rent under the Lease in the amount of $179,023.22 (the "Delinquent Rent"), and Landlord has agreed to permit Tenant to assume the Lease and cure the Delinquent Rent over time in satisfaction of the requirements of 11 U.S.C. §365(b) and in accordance with the terms of this Amendment.

E. On August 14, 2024, the Tenant filed the *Plan of Reorganization Dated August 14, 2024* [Docket No. 91 in the Bankruptcy Case], as may be amended (the "Plan"), and will seek to have the Bankruptcy Court confirm the Plan on October 1, 2024, to facilitate the Tenant's emergence from the Bankruptcy Case on a subsequent date (the "Plan Effective Date").

F. Landlord and Tenant desire to modify and amend the Lease as set forth in this Amendment.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and for other good and valuable consideration, the receipt whereof and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

1. Scope of Amendment; Defined Terms; Incorporation of Recitals. Except as expressly provided in this Amendment, the Lease shall remain in full force and effect in all respects and the term "Lease" shall mean the Lease as modified by this Amendment. Capitalized terms used but not otherwise defined in this Amendment have the respective meanings given to them in the Lease. The preamble and recitals set forth above are hereby incorporated into this Amendment by this reference in their entirety.

2. Modifications and Amendments to Lease. Notwithstanding anything in the Lease to the contrary, the Lease is hereby modified and amended as follows:

(a) Repayment. Tenant acknowledges and agrees that Tenant failed to pay the Delinquent Rent. Tenant hereby agrees to pay the Delinquent Rent to Landlord, which amount shall bear interest at 7% per annum. In addition to Base Rent and Additional Rent (including Operating Costs), commencing on the first day of the first full calendar month following the Plan Effective Date in the Bankruptcy Case and ending thirty-six (36) full calendar months thereafter (the "Repayment Term"), Tenant will pay to Landlord, as Additional Rent, $5,527.72 on the first day of each calendar month during the Repayment Term (the

"Delinquency Payment"), and Landlord will apply the Delinquency Payment (excluding any interest component) against the Delinquent Rent. Tenant's failure to pay any Delinquency Payment within five (5) days of its due date shall be an immediate default under the Lease without the requirement to notify Tenant in writing of such failure. Tenant shall be allowed five (5) days to cure such default on the Delinquency Payment.

(b) Assignment and Subletting. The following is added as a new Section 20.7 to the Original Lease:

"20.7 **Additional Occupant**. Notwithstanding any other provision of this Article XX to the contrary, so long as Tenant is occupying at least eighty percent (80%) of the Premises for its own use, Tenant may permit the use and occupancy of portions of the Premises by Maxwell Distributors (the "**Additional Occupant**"). The Additional Occupant's occupancy is subject to and conditioned on Tenant's full and complete observance of its obligations and covenants under this Lease, including, but not limited to, the payment of Base Rent, Additional Rent, and all other sums required to be paid under the terms of this Lease, and on the Additional Occupant's agreement to fully and completely observe all the Tenant's covenants in this Lease, including, without limitation, the insurance and indemnity obligations set forth in Article XVI and Article XVII of this Lease, with the exception of the payment of rental and other sums required to be paid thereunder which remain the obligation of Tenant. Landlord's consent to the Additional Occupant's use of portions of the Premises shall not in any way release and/or discharge the Tenant from any or all of its covenants made under the terms of this Lease, and Tenant shall be and remain fully responsible under the terms and conditions of this Lease. Nor shall this consent constitute a waiver of the consent requirement for any future subletting, assignment or other allowed occupancy by Tenant nor shall the collection or acceptance of rent from the Additional Occupant be construed to relieve Tenant of any obligations under this Lease; provided, however, Tenant shall be entitled to a credit to the extent of the actual rent so collected. It is further understood that all obligations required to be performed and all services required to be provided by Landlord under this Lease can be enforced or called upon by only Tenant. Landlord shall have no direct liability to the Additional Occupant by virtue of this consent or otherwise for failure to perform any such obligations or provide any such services whatsoever."

(c) Notices. Notwithstanding any contrary provision in the Lease, all notices to Landlord shall be addressed to:

BTC III Denver Industrial Center LLC
c/o Ares Management LLC
Attn: Scott Recknor, Partner
1200 Seventeenth Street, Suite 2900
Denver, Colorado 80202
Phone: (303) 869-4600

With a copy to:

BTC III Denver Industrial Center LLC
c/o Ares Management LLC
Attn: Associate General Counsel
1200 Seventeenth Street, Suite 2900
Denver, Colorado 80202

(d) Address for Payments. All amounts payable by Tenant to Landlord shall, until further notice from Landlord, be paid to Landlord pursuant to the following instructions:

If by ACH or Wire Transfer:

Account Name: Build-to-Core Industrial Partnership III LLC
Financial Institution: Bank of America Merrill Lynch
ACH Routing Number: 111000025

Wire Routing Number: 026009593
Account Number: 488061561032
Reference: Property Number - 494301

3. Condition of Premises. Landlord shall not be required to perform any leasehold improvements or provide any improvement allowance in connection with this Amendment.

4. Payment of Commission. In connection with this Amendment, Tenant acknowledges that it has not used the services of a broker or other real estate agent or licensee. In the event of a claim for broker's fee, finder's fee, commission or other similar compensation in connection herewith based on any other relationship with or through Tenant, Tenant hereby agrees to protect, defend, and indemnify Landlord against and hold Landlord harmless from any and all damages, liabilities, costs, expenses, and losses (including, without limitation, reasonable attorneys' fees and costs) which Landlord may sustain or incur by reason of such claim.

5. Waiver. No failure or delay by a party to insist upon the strict performance of any term, condition, or covenant of this Amendment, or to exercise any right, power, or remedy hereunder shall constitute a waiver of the same or any other term of this Amendment or preclude such party from enforcing or exercising the same or any such other term, conditions, covenant, right, power, or remedy at any later time.

6. Ratification. As amended hereby, the Lease is hereby ratified and shall remain in full force and effect.

7. Governing Law; Venue. The interpretation, validity, and enforcement of this Amendment shall be governed by and construed under the internal laws of the state in which the Premises are located, excluding such state's principles of conflict of laws. Except to the extent required otherwise by applicable law, the venue for any action relating to this Amendment shall be brought solely and exclusively in the state and the county in which the Premises are located.

8. Tenant's Compliance with Law. Tenant shall procure at its sole expense any permits and licenses required for the transaction of business in the Premises and shall otherwise comply with all applicable federal, state, county, and municipal laws, ordinances, and governmental regulations.

9. Authority. This Amendment shall be binding upon and inure to the benefit of the Parties, their respective heirs, legal representatives, successors, and assigns. Each party hereto warrants that the person signing below on such party's behalf is authorized to do so and to bind such party to the terms of this Amendment.

10. Entire Agreement; No Amendment. This Amendment constitutes the entire agreement and understanding between the Parties with respect to the subject of this Amendment and shall supersede all prior written and oral agreements concerning this subject matter. This Amendment may not be amended, modified, or otherwise changed in any respect whatsoever except by a writing duly executed by authorized representatives of Landlord and Tenant. Each party acknowledges that it has read this Amendment, fully understands all of this Amendment's terms and conditions, and executes this Amendment freely, voluntarily, and with full knowledge of its significance. Each party to this Amendment has had the opportunity to receive the advice of counsel prior to the execution hereof.

11. Severability. If any provision of this Amendment or the application thereof to any person or circumstances shall be invalid or unenforceable to any extent, the remainder of this Amendment and the application of such provision to other persons or circumstances, other than those to which it is held invalid, shall not be affected and shall be enforced to the furthest extent permitted by law.

12. Counterparts. This Amendment may be executed in counterparts, and such counterparts together shall constitute but one original of the Amendment. Each counterpart shall be equally admissible in evidence, and each original shall fully bind each party who has executed it.

13. Agreement to Perform Necessary Acts. Each party agrees that upon demand, it shall promptly perform all further acts and execute, acknowledge, and deliver all further instructions, instruments, and documents which may be reasonably necessary or useful to carry out the provisions of this Amendment.

14. Captions and Headings. The titles or headings of the various paragraphs hereof are intended solely for convenience of reference and are not intended and shall not be deemed to modify, explain, or place any construction upon any of the provisions of this Amendment.

15. Condition Precedent. It shall be a condition precedent to the effectiveness of this Amendment that the Bankruptcy Court enters an order approving the "Assumption of Lease, Settlement, and Release Agreement" (hereinafter the "Settlement Agreement") between the Tenant and the Landlord, which settlement includes, among other things, the assumption and cure of the Lease subject to the Tenant's entry into this Amendment. If the Bankruptcy Court does not approve the Settlement Agreement, either through a separate order or through an order approving the Debtor's Plan which incorporates the terms of this the Settlement Agreement, this Amendment shall be of no force or effect and shall not be binding upon the Parties.

[Signatures on Following Page]

IN WITNESS WHEREOF, the undersigned have duly executed this Amendment as of the Effective Date.

**LANDLORD:**

**BTC III DENVER INDUSTRIAL CENTER LLC,**
a Delaware limited liability company

By: Build-To-Core Industrial Partnership III LLC,
a Delaware limited liability company,
its Sole Member

By: BCG BTC III Managing Member LLC,
a Delaware limited liability company,
its Investment Managing Member

By: ______________________________
Name: ______________________________
Title: ______________________________

**TENANT:**

**CREAGER MERCANTILE CO.**,
a Colorado corporation

By: ______________________________
Name: ______________________________
Title: ______________________________